**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

UNITED STATES OF AMERICA                                        PLAINTIFF

v.                              **Case No. 4:21-CR-00323-04-LPR**

JACKIE DAVIDSON                                                 DEFENDANT

<u>**ORDER**</u>

Defendant Jackie Davidson is charged with the assault and attempted murder of two federal law-enforcement officers.  Such accusations may conjure mental images of a man violently resisting arrest or attacking agents who were executing a search warrant.  But that's not what Mr. Davidson says he did.  If his counsel's explanation of events is credited, Mr. Davidson fired a warning shot at the rear bumper of an SUV that he mistakenly thought was being driven by a civilian with whom Mr. Davidson had a pre-existing, contentious relationship.  He fired the shot after the SUV drove past him (nearly hitting him) and was driving away.  He followed this shot with shots into the air.

Apparently, just two days before the events giving rise to this prosecution, Mr. Davidson had a near-violent encounter with this civilian.  ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████  So when Mr. Davidson saw an SUV that looked very much like the one ████ had driven two days earlier coming down the road, Mr. Davidson thought ████ was coming back to ████████.  Mr. Davidson tried to flag down and speak to ████  But the SUV drove past Mr. Davidson, forcing him to jump out of the SUV's way.  ████████████████████████████████████████████ ████████.  While the SUV drove away, Mr. Davidson's mind turned to a host of worrisome

possibilities. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

Mr. Davidson decided to deter any of these possible scenarios. ████████████████

████████████████████████████████████████

████████████ So Mr. Davidson fired one shotgun blast at the rear bumper of the SUV and then

fired a pistol multiple times into the air. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████ the

SUV's occupants were two federal law-enforcement officers conducting surveillance on a man

who lived on property neighboring Mr. Davidson's.  That is how Mr. Davidson ████████████

████████████████████████████████████████

████████████████████████████ ended up facing charges of assault and attempted

murder of federal agents.

To be clear, the foregoing is Mr. Davidson's side of the story.  Based on this version of the

relevant events, Mr. Davidson claims that he acted in self-defense.  But the Government has filed

a Motion in Limine asking this Court to (1) prohibit Mr. Davidson from making a self-defense

argument at trial and (2) exclude any evidence that will go only toward Mr. Davidson's proposed

self-defense theory.  The Government's point is that, even fully crediting Mr. Davidson's story,

warning shots are not self-defense.  Accordingly, allowing Mr. Davidson to argue, or even allude

to, self-defense would (1) open the door to jury nullification and (2) require allowing Mr. Davidson

to introduce irrelevant, and possibly unduly prejudicial, evidence.  For the reasons stated below,

the Court agrees with most of the Government's argument.  Under Mr. Davidson's own theory of the case, his gunfire was a preemptive warning attack.  As such, the gunfire was not an act of self-defense.  Accordingly, the Government's Motion in Limine is GRANTED.[1]

## BACKGROUND

Unless otherwise noted, this factual background is composed of facts proffered to the Court by Mr. Davidson's attorneys—either orally during an *ex parte* portion of the hearing on the Government's Motion,[2] or via Mr. Davidson's briefing on the Motion.  The facts proffered by Mr. Davidson's attorneys represent the best-case scenario, from Mr. Davidson's perspective, of the evidence that could be presented to the jury at trial.

Mr. Davidson lived at the dead end of a long private road in a rural part of central Arkansas.[3]  The private road on which Mr. Davidson lived, Lee Street, is an offshoot from a public road, Woodson Lateral Road.[4]  If you were to turn onto Lee Street from Woodson Lateral Road, you would be driving down a one-lane, unpaved gravel road.[5]  At the beginning of your journey down Lee Street, you would see an open field to your left and a dense wooded area on your right.[6]  About halfway down the road, that open field on the left would turn into a densely wooded area just like the one on the right side of Lee Street, meaning both sides of Lee Street become forested.[7]

---

[1] USA's Mot. in Limine (Doc. 140).

[2] *See infra* note 90.

[3] *See* Apr. 5, 2023 Hr'g Sealed Tr. at 2–4, 17–18.  During their proffer, Mr. Davidson's attorneys described Lee Street by referencing two different maps: one provided by the Government as part of its Motion; another pulled from a Google Earth search.  *See id.* at 16, 25.

[4] *See id.* at 2–3.

[5] *See id.* at 16–18.

[6] *See id.* at 27–28.

[7] *See id.* at 27.

After continuing a little farther down Lee Street, you would take a fairly sharp turn to the right.  At the corner on your left would be the home of Leon, Mr. Davidson's cousin.[8]  One of Mr. Davidson's co-defendants, Abelardo Gonzalez, lived in a separate building on Leon's property.[9]  If you continued down Lee Street from Leon's property, you would soon come to a dead end and be at the home of Mr. Davidson and his wife.[10] ███████████████████████████

███████████████████████.[11] ████████████████████████████

████████████████████.[12]

There was a lot of unsettling activity happening on Lee Street in the period leading up to the events that gave rise to this prosecution. ███████████████████████

████████████████.[13]  And a burning vehicle with a dead body inside was discovered near the intersection of Lee Street and Woodson Lateral Road.[14] ███████████████████████████

████████.[15] ████████████████████████████████████

Mr. Davidson's chief concern was a man named ███████ ██████ was a friend of Leon ████

████████████.[16] ██████ would frequently visit Leon ████████████████████████████

████████████████████.[17] ████████████████████████

---

[8] Id. at 4; see also USA's Mot. in Limine (Doc. 140) at 9.

[9] Apr. 5, 2023 Hr'g Sealed Tr. at 4; see also Indictment (Doc. 32) at 1.  Abelardo Gonzalez was indicted on charges of (1) conspiring to distribute and possess with intent to distribute methamphetamine and (2) unlawful possession of a firearm.  See Indictment (Doc. 32) at 1, 4.  He pleaded guilty to the conspiracy charge.  See Clerk's Mins. (Doc. 260).

[10] Apr. 5, 2023 Hr'g Sealed Tr. at 4; see also USA's Mot. in Limine (Doc. 140) at 9.

[11] Apr. 5, 2023 Hr'g Sealed Tr. at 3.

[12] See id.

[13] Id. at 4.

[14] Id. at 5.

[15] Id. at 5–6.

[16] Id. at 6.

[17] Id.

████████████████████████   ███████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████[18] ████████████████████████████████████

███████████████████████.[19] ███████████████████████████████████

████████████████████████████████████.[20] ████████████████████████

███████████████████████████████████████[21]  Mr. Davidson had also

seen ██████ carrying a gun, ████████████████████████████████████

██████████[22] ██████████████████████████████████[23]

On November 14, 2021, Mr. Davidson had a particularly contentious encounter with

████.[24] █████████████████████████████████████████████████████████

████████████████████.[25] ██████████████████████████████ arrived

near the Davidson property in a black SUV with tinted windows.[26] ████████████████████

████████████████████████████████████ brandished a gun; ████████████

████████████████████████████████████████[27] ███████████████████

████████████████████████[28]

---

[18] *See id.* at 7–8.

[19] *Id.*

[20] *Id.* at 8.

[21] *Id.* at 8–9.

[22] *Id.* at 9.

[23] *Id.*

[24] *Id.* at 6–7.

[25] *Id.* at 10.

[26] *Id.* at 6–7.

[27] *Id.* at 7–11.

[28] *See id.*

Two days later, on November 16, 2021, Mr. Davidson saw a black SUV with tinted windows driving slowly down Lee Street from the Woodson Lateral Road turnoff.[29]  At the time, Mr. Davidson ███████████████████ deer hunting ████████████████ down Lee Street ████████████████████████████████[30]  The black SUV passed by Mr. Davidson's location and continued driving slowly down Lee Street toward Leon's and Mr. Davidson's properties.[31] ████████████████████████████████ ████████████████████████████████.[32] ███████████ ████████████████████████████████[33]  Concerned that ████████████████████ had returned to Lee Street to cause more trouble, Mr. Davidson left his hunting area and began walking after the SUV.[34]  Meanwhile, the SUV reached the end of Lee Street, turned around, and began to head back up Lee Street toward Woodson Lateral Road.[35]

Mr. Davidson and the SUV were now traveling toward each other—Mr. Davidson heading down Lee Street toward his home on foot; the SUV heading up Lee Street toward Woodson Lateral Road.  As he and the SUV got closer to each other, Mr. Davidson attempted to flag down the driver ████████████████████████████████.[36]  Instead of stopping to speak to Mr. Davidson, the driver of the SUV "sped up" and drove past Mr.

---

[29] *Id.* at 11–13, 16–18.

[30] *See id.* at 12, 17.

[31] *Id.* at 18.

[32] *Id.* at 23.

[33] *Id.* at 18, 23.

[34] *Id.* at 18.

[35] *Id.* at 19–20.

[36] *Id.*

Davidson.[37]  It's not clear exactly how fast the SUV was going when it "sped" past Mr. Davidson;

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████[38]  In any event, given Lee Street's narrowness, Mr. Davidson had to jump out of

the SUV's way to avoid being struck by the vehicle.[39]

███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████.[40] █████  Mr. Davidson was processing a "number of possibilities" in his mind.[41] ████████

███████████████████████████████████████████████████████████

██████████████[42] ████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████



---

[37] *Id.* at 20.

[38] ███
*See id.* at 20. ████████
█████████████████████████ *Id.* at 21, 24; *see also id.* at 32–33. ████
████████████████████████████████████████████ *See id.* at 16–18, 22–23.
██████████████████████████████████████████████ , *see id.* at 16, ████
██████████████████

[39] *Id.* at 19–21.

[40] *See id.* at 22–24.

[41] *Id.* at 36.

[42] *See id.* at 21.

███████████████████████████████████████████████████████

████████████████████████████████████████████[43]

       Mr. Davidson wanted to prevent any potential attack on him, whether at that moment or shortly thereafter. Mr. Davidson was clear that he wanted to "dissuade the occupants from returning to his property to cause harm to himself or his wife."[44] Mr. Davidson fired his deer-hunting gun, a shotgun ██████████████, at the SUV's rear bumper.[45] He hit what he aimed at—the bumper.[46] Mr. Davidson attempted to fire his shotgun again, but the gun had jammed after the initial shot.[47] So Mr. Davidson pulled out a small pistol ████████████████████ ████████████ and fired multiple shots into the air.[48]

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

████████[49]███████████████████████████████████

███████████████████[50]████████████████████████████████

---

[43] *Id.* at 21–22, 36, 59.

[44] Def.'s Surreply to USA's Mot. in Limine (Doc. 234) at 2; *see also* Apr. 5, 2023 Hr'g Sealed Tr. at 23–24.

[45] Apr. 5, 2023 Hr'g Sealed Tr. at 12, 23, 33–34.

[46] *Id.* at 23, 31.

[47] *Id.* at 22; Def.'s Surreply to USA's Mot. in Limine (Doc. 234) at 2.

[48] Apr. 5, 2023 Hr'g Sealed Tr. at 7, 23; Def.'s Surreply to USA's Mot. in Limine (Doc. 234) at 2. ████████
██████████████████████████ *See* Apr. 5, 2023 Hr'g Sealed Tr. at 7.

[49] Apr. 5, 2023 Hr'g Sealed Tr. at 23, 36.

[50] *Id.* at 36–37.



About two weeks later, in early December of 2021, police officers came down Lee Street ████████████████████████████████ [54] It appears that Mr. Davidson thought the police were there to investigate his shooting at the SUV. ████████████████████

Mr. Davidson was indicted by a grand jury on charges that he attempted to murder federal officers in violation of 18 U.S.C. §§ 1113 and 1114, that he assaulted a federal officer with a deadly or dangerous weapon in violation of 18 U.S.C. § 111(a)(1) and (b), and that he knowingly and

---

[51] *Id.*

[52] *Id.* at 37.

[53] *Id.* at 38.

[54] *Id.* at 39.

[55] *Id.* at 39–40.

[56] *See id.* at 15 (███████████████████████████████); Apr. 5, 2023 Hr'g Public Tr. at 33 (Government counsel stating that there were two agents investigating the warrant).

[57] *See* Apr. 5, 2023 Hr'g Sealed Tr. at 13–16. ████████████████████ *Id.*

[58] *Id.* at 15–16.

intentionally used and discharged a firearm in relation to crimes of violence in violation of 18 U.S.C. § 924(c)(1)(A).[59]  Mr. Davidson pleaded not guilty to those charges.[60]  He is set to stand trial on May 2, 2023.[61]  At trial, Mr. Davidson intends to argue that, when he fired his guns, he was acting in self-defense.  The Government has filed a Motion in Limine, seeking to prevent Mr. Davidson from making a self-defense argument and introducing evidence related to such an argument.[62]  The Motion has been thoroughly briefed, and the Court held an extensive hearing on the matter.

## DISCUSSION

There are two issues at play with respect to the Government's Motion.  The primary issue is whether, under the applicable law and particular facts of this case, Mr. Davidson is the type of defendant who is allowed to ask a jury to consider whether he acted in self-defense.  The Court concludes that Mr. Davidson is not such a defendant because he has not produced sufficient evidence that he believed his use of force was necessary to protect himself from imminent harm.  The second issue is one of timing: Is now the proper time to make this decision?  Mr. Davidson says no because, in his view, the Court should wait until after all of the evidence has come in at trial and it is time to finalize jury instructions.  Ultimately, Supreme Court and Eighth Circuit precedent, as well as common sense, counsel this Court to resolve the self-defense issue at this stage of the case.

---

[59] Indictment (Doc. 32) at 2–4.  There are two Counts charging violations of § 924(c)(1)(A)—one tied to the attempted murder charge, one tied to the assault charge.  *Id.*

[60] Clerk's Mins. (Doc. 43).

[61] Fourth Am. General Criminal Scheduling Order (Doc. 212) at 1.

[62] USA's Mot. in Limine (Doc. 140).

## I.    Availability of Self-Defense

Self-defense is a justification defense.[63]   A defendant pursuing a justification defense essentially admits to taking certain actions but asks the jury to find that those actions were justified in light of the circumstances in which the defendant took the actions.   In the case at bar, arguing self-defense means that Mr. Davidson would essentially be (1) admitting that he purposely shot at the SUV, but (2) asking the jury to find that shooting at the SUV was justified because Mr. Davidson believed his life was in imminent danger.[64]

Self-defense can be "perfect" or "imperfect."[65]   In the context of this case, there are two important differences between perfect and imperfect self-defense arguments.   The first difference concerns the reasonableness of a defendant's mental state at the time of the alleged self-defense. A defendant who used deadly force has a perfect self-defense argument if the defendant "reasonably believe[d]" that he or she faced an "imminent" threat of "death or great bodily harm . . . ."[66]   Imperfect self-defense occurs when the defendant truly believed that use of force was necessary to avoid imminent harm, but the defendant's belief was unreasonable.[67]

---

[63] *See United States v. Greer*, 57 F.4th 626, 629 (8th Cir. 2023) (citing *United States v. Tunley*, 664 F.3d 1260, 1262 n.3 (8th Cir. 2012)).

[64] Of course, defendants may pursue multiple, inconsistent defenses. *See United States v. Fay*, 668 F.2d 375, 378 (8th Cir. 1981).

[65] There is some disagreement between the parties as to whether Arkansas statutory law or Eighth Circuit precedent should provide the framework for the Court's substantive legal analysis of the self-defense question. *See* Def.'s Resp. to USA's Mot. in Limine (Doc. 192) at 9–10 (arguing that Arkansas state law controls); Apr. 5, 2023 Hr'g Public Tr. at 26 (Government's counsel contending that federal law would apply if there was a conflict with state law).   But the state-or-federal-law question isn't dispositive here.   Mr. Davidson agrees that, regardless of the specific law applied, he must at the very least have held an actual belief that he was facing imminent harm. *See* Apr. 5, 2023 Hr'g Sealed Tr. at 49–50.   As discussed below, Mr. Davidson's evidentiary proffer is insufficient on this point.   So he isn't able to pursue a self-defense argument under either Arkansas law or Eighth Circuit precedent.

[66] *United States v. Farlee*, 757 F.3d 810, 818 (8th Cir. 2014).

[67] *United States v. Milk*, 447 F.3d 593, 599 (8th Cir. 2006).   There's a second version of imperfect self-defense. Sometimes a defendant is reasonable for thinking that some force is necessary to avoid an imminent harm, but that defendant uses an unreasonably severe degree of force. *See id.*   Mr. Davidson doesn't advance this particular version of an imperfect self-defense argument.

The second difference concerns the degree to which a defendant can avoid criminal liability.  If Mr. Davidson successfully argued perfect self-defense at trial, it would be a complete defense to the assault and attempted-murder charges that he faces.[68]  Imperfect self-defense, on the other hand, would serve to lessen (but not eliminate) Mr. Davidson's criminal liability on the attempted-murder charge; and it would not impact Mr. Davidson's potential liability on the assault charge.[69]

Mr. Davidson would like to have the option of arguing both perfect and imperfect self-defense at trial.[70]  When a defendant seeks to rely on any justification defense, the law requires the defendant to shoulder certain burdens.  Some justification defenses require the defendant to both produce evidence and persuade the jury that his or her actions were justified.[71]  That is, defendants have both the burden of production and the burden of persuasion.  But self-defense is a little different.  When a defendant wants to submit a self-defense instruction to the jury, that defendant carries only a burden of production.[72]  If a defendant meets his or her burden of production, then the Government is required to prove beyond a reasonable doubt that the defendant did not act in self-defense.[73]  Practically speaking, a defendant who satisfies his or her burden of production adds an element to the Government's case.

---

[68] *See Tunley*, 664 F.3d at 1262–63 n.3; *United States v. Stymiest*, 581 F.3d 759, 766 (8th Cir. 2009).

[69] *See Milk*, 447 F.3d at 599; *see also* Apr. 5, 2023 Hr'g Sealed Tr. at 46 (defense counsel conceding that "imperfect self-defense is not available on an assault" charge).

[70] *See* Def.'s Surreply to USA's Mot. in Limine (Doc. 234) at 8–13.

[71] *See generally Dixon v. United States*, 548 U.S. 1, 8 (2006) ("[A]t common law, the burden of proving . . . circumstances of justification, excuse or alleviation—rested on the defendant.  This common-law rule accords with the general evidentiary rule that the burdens of producing evidence and of persuasion with regard to any given issue are both generally allocated to the same party." (internal quotation marks and citations omitted)).

[72] *Milk*, 447 F.3d at 598.

[73] *Id.*

The burden of production in self-defense cases is pretty low.  To meet the burden of production, a defendant must show that the record contains more than "a mere scintilla of evidence" that the defendant acted in self-defense.[74]  Evidence rises beyond a mere scintilla when it is sufficient "for a jury to rationally sustain the defense."[75]  A jury sustains the defense by finding that the Government failed to prove beyond a reasonable doubt that the defendant did not act in self-defense.[76]  So, putting that all together, Mr. Davidson's burden of production requires him to produce or identify evidence that could cause a rational juror to reasonably doubt the Government's contention that Mr. Davidson did not act in self-defense.

The more-than-a-mere-scintilla-of-evidence standard necessarily comprises qualitative and quantitative aspects.  Qualitatively, this standard requires the Court to determine what, if any, of Mr. Davidson's proffered evidence is indeed evidence of self-defense at all.  Self-defense evidence would be evidence that could cause a rational juror to reasonably doubt the Government's contentions that (1) Mr. Davidson did not truly believe that shooting at the back of the SUV was necessary to avoid imminent death or great bodily harm and (2) any such belief would have been objectively unreasonable.  After identifying which pieces of evidence go toward Mr. Davidson's self-defense arguments, the quantitative question arises.  That is, the Court must decide whether the sum of Mr. Davidson's self-defense evidence amounts to more than a mere scintilla of evidence that he acted in self-defense.  A defendant cannot satisfy his or her burden of production by simply and abstractly saying that he or she acted in self-defense.[77]  That is especially true when, as is the

---

[74] *United States v. Davis*, 237 F.3d 942, 945 (8th Cir. 2001) (citing *Hall v. United States*, 46 F.3d 855, 857 (8th Cir. 1995)).

[75] *Id.* (citing *Hall*, 46 F.3d at 857).

[76] *See Milk*, 447 F.3d at 598.

[77] *See Davis*, 237 F.3d at 945 (citing *Baker v. Montgomery*, 811 F.2d 557, 559–61 (11th Cir. 1987)); *Hall*, 46 F.3d at 857–58.

case here, all other evidence—including the defendant's more-detailed explanation of his own actions—directly contradicts any self-defense argument.

Mr. Davidson's attorneys have attempted to proffer evidence that could be presented at trial to create a reasonable doubt as to the Government's contention that Mr. Davidson did not act in self-defense. In that proffer, Mr. Davidson's attorneys readily acknowledge that, at the moment Mr. Davidson began to shoot, the SUV had already passed by Mr. Davidson, ███████████ ████████████████████████████████████████████████████████████████

████.[78] Mr. Davidson's attorneys state, however, that as the SUV was driving away, Mr. Davidson was considering a "number of possibilities" in which the SUV's occupant(s) could be planning to cause harm to Mr. Davidson, his wife, or his property.[79] ██████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████[80]

Mr. Davidson's biggest problem is that these proffered grounds do not offer sufficient evidence that he acted in fear of an *imminent* harm. The term "imminent" is not neatly defined by any relevant statute or Eighth Circuit precedent. Other federal courts of appeals have held that, for purposes of self-defense, a harm is imminent when the danger is already occurring or threatening to occur immediately, and death or serious injury is essentially unavoidable other than

---

[78] *See* Apr. 5, 2023 Hr'g Sealed Tr. at 22–23.

[79] *Id.* at 36.

[80] *Id.* at 21–22, 36, 59.

by the defendant's use of force.[81]  The Eighth Circuit employs a similar understanding of the term "imminent" in its self-defense and other justification-defense cases.[82]

Given this understanding of imminence, it is easy to see that Mr. Davidson's first █ proffered grounds for self-defense do not amount to evidence of self-defense at all.  That is because none of those proffered grounds evidences that Mr. Davidson believed he was facing an immediate danger of death or serious bodily injury. ████████████████████████



████████████████████████████ Thus, based on the first █ proffered grounds for self-defense, Mr. Davidson did not actually believe himself to have been in some *imminent* life-or-death situation that necessitated his use of force.

---

[81] *See Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 567 (6th Cir. 2016); *United States v. Feather*, 768 F.3d 735, 739–40 (7th Cir. 2014); *United States v. Toledo*, 739 F.3d 562, 567 (10th Cir. 2014); *United States v. Urena*, 659 F.3d 903, 907 (9th Cir. 2011); *United States v. White*, 552 F.3d 240, 246–48 (2d Cir. 2009); *United States v. Peterson*, 483 F.2d 1222, 1229–30 (D.C. Cir. 1973); *see also Imminent*, *Black's Law Dictionary* (11th ed. 2019) (defining imminent as "a danger or calamity" that is "threatening to occur immediately" or is "dangerously impending . . ."); *cf. United States v. Maxwell*, 254 F.3d 21, 27–28 (1st Cir. 2001) (discussing the imminence requirement in the context of a necessity defense); *United States v. Deleveaux*, 205 F.3d 1292, 1297 (11th Cir. 2000) (considering imminence in context of justification defenses, generally).

[82] *See United States v. Blue Bird*, 123 F. App'x 262, 265 (8th Cir. 2005) (affirming the district court's exclusion of self-defense evidence and refusal to instruct jury on self-defense when the defendant's "own version" of the facts showed that the victim "posed no immediate threat to" the defendant); *United States v. Andrade-Rodriguez*, 531 F.3d 721, 723 (8th Cir. 2008) (discussing "necessity/justification defense[s] generally . . ."); *United States v. Harper*, 466 F.3d 634, 648 (8th Cir. 2006) (analyzing the "immediacy element" of a coercion defense); *United States v. Campbell*, 609 F.2d 922, 925 (8th Cir. 1979) (same).

Mr. Davidson's ███ proffered ground for self-defense, however, is a closer call. ███

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████ And, understood that way, the proffer contains at least *some* evidence that Mr. Davidson actually (but perhaps unreasonably) believed he was facing an imminent deadly harm. The question thus becomes whether this one potential understanding of the somewhat vague and varied proffer is more than a mere scintilla of evidence that Mr. Davidson truly held such a belief. It is not.

Aside from one extremely generous potential understanding of one small piece of the proffer, all other aspects of that proffer undermine any notion that Mr. Davidson believed he was presently in harm's way when he fired his guns. Instead, the proffer serves only to establish that he believed himself to be warning the occupant(s) of the SUV from coming back to Lee Street in the future and causing harm to Mr. Davidson, his wife, or his property. Mr. Davidson's attorneys don't really shy away from the fact that Mr. Davidson sought to avoid a speculative future harm. Indeed, the central theme of their argument is that Mr. Davidson was scared because he didn't know what action (if any) the SUV's occupant(s) might take against him and when (if at all) such action would be taken.[83] Their contention seems to be that Mr. Davidson was within his rights to try to ease his concerns by firing warning shots and hopefully convincing the SUV's occupants

---

[83] *See* Apr. 5, 2023 Hr'g Sealed Tr. at 36 ███████████████████████████████████████████
███████████████████████████████████████████████ .

not to come back to Lee Street, thus wiping all of the worrisome, albeit speculative, "possibilities" off the table.[84]

This understanding of defense counsel's basic argument is confirmed by considering the way in which they describe Mr. Davidson's thought process as he reached his decision to shoot at the back of the SUV. Mr. Davidson's attorneys proffered (by way of a brief) that Mr. Davidson fired at the SUV "to dissuade the [SUV's] occupants from returning to his property to cause harm to himself or his wife."[85] ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ [86] That isn't an assertion (or evidence) that Mr. Davidson was motivated to pull the trigger because he thought doing so was necessary to escape a presently dangerous situation.

Force used in self-defense must come in response to what the defendant perceived to be an imminent threat of real harm—not in anticipation of a possible future encounter. A defendant who uses force in such a preemptive manner is the initial aggressor and, as a matter of law, cannot advance "a self-defense claim, be it a perfect or imperfect one."[87] Mr. Davidson's attorneys have not proffered sufficient evidence that Mr. Davidson acted in self-defense. At most, they produced a mere scintilla of such evidence by proffering that ███████████████████████████████

████████████████████████████ But that mere scintilla of evidence is dwarfed by all other aspects of the proffer, which show that Mr. Davidson meant the gunshots to serve as a warning. Because Mr. Davidson has not met his burden of production as to the existence

---

[84] *See id.* at 23–24, 36; Def.'s Surreply to USA's Mot. in Limine (Doc. 234) at 2.

[85] Def.'s Surreply to USA's Mot. in Limine (Doc. 234) at 2.

[86] Apr. 5, 2023 Hr'g Sealed Tr. at 23–24.

[87] *Milk*, 447 F.3d at 599; *see Blue Bird*, 123 F. App'x at 265; *see also Urena*, 659 F.3d at 907; *United States v. Haynes*, 143 F.3d 1089 (7th Cir. 1998); *United States v. Thomas*, 752 F. App'x 606, 608–09 (10th Cir. 2018).

of an actual belief that he was in *imminent* danger, he cannot argue either perfect or imperfect self-defense at trial.

## II.      Propriety of Pre-Trial Resolution

As one might expect, Mr. Davidson disagrees with the substance of the Court's conclusion on the viability of a self-defense argument.   Less usual, but also understandable, is his disagreement with the process that led to this decision.   Specifically, Mr. Davidson contends that the Court errs by resolving the Government's Motion at this time.   As Mr. Davidson sees things, the proper course is to go to trial, wait until all the evidence has been presented to the jury, and then decide whether that evidence satisfies the more-than-a-mere-scintilla standard necessary to instruct the jury on self-defense.

Mr. Davidson's argument runs headlong into precedent.   The Supreme Court, the Eighth Circuit, and other federal courts of appeal have held that the Government may move pre-trial to foreclose a justification defense.[88]   Upon such a motion, the defendant must show, often by way of a proffer, that there could be evidence produced at trial that would enable the defendant to meet his or her burden of production (and, in most cases, but not this one, persuasion) as to the relevant defense.[89]   Neither the Government's Motion nor the Court's disposition of that Motion is procedurally deficient.[90]

---

[88] *See, e.g.*, *United States v. Bailey*, 444 U.S. 394 (1980); *United States v. Myles*, 962 F.3d 384, 387–88 (8th Cir. 2020); *Maxwell*, 254 F.3d at 26; *United States v. Shapiro*, 669 F.2d 593, 596–97 (9th Cir. 1982).

[89] *See, e.g.*, *Bailey*, 444 U.S. at 415; *Andrade-Rodriguez*, 531 F.3d at 723–24; *Maxwell*, 254 F.3d at 26.

[90] One possible quirk about the pre-trial-proffer method, generally, is that a criminal defendant can to some extent be forced into revealing trial strategy.   That is, the defendant (or, more specifically, defense counsel) has to go before the Court and counsel for the Government to detail the evidence he or she hopes to elicit at trial.   Requiring Mr. Davidson to lay his cards on the table in front of the Government struck this Court as a bit unnerving.   Accordingly, the Court allowed defense counsel to make the pre-trial proffer in a sealed, *ex parte* portion of the hearing.   *See* Apr. 5, 2023 Hr'g Public Tr. at 31–34, 92–110.   While *ex parte* proceedings are generally disfavored, the Court concluded that the risk of revealing to the Government Mr. Davidson's trial strategy, specific witnesses, and even the substance of Mr. Davidson's possible testimony provided a compelling justification for conducting the proffer *ex parte*—initially, at least.   *Id.* at 107–09.   *But see United States v. Carpenter*, 923 F.3d 1172, 1177–80 (9th Cir. 2019).   The Court will review the transcript of the proffer and reassess whether any information disclosed by defense counsel is indeed so

It is true that, so far as this Court and the parties can tell, neither the Supreme Court nor the Eighth Circuit has employed the pre-trial-proffer method in a case involving self-defense, specifically. But that doesn't seem to be the result of a legal principle barring pre-trial exclusion of a self-defense argument. Those courts just haven't seen such a case yet. In other circuits, when the Government moves pre-trial to exclude self-defense arguments, courts generally appear to entertain and resolve the motion the same way as any other pre-trial motions seeking to prevent the defendant from making justification arguments.[91] That makes sense, because there isn't really a logical, principled way to distinguish self-defense from the other justification defenses for purposes of pre-trial resolution. The defendant bears a burden of production with respect to both self-defense and the other justification defenses.[92] And a defendant's failure to satisfy his or her burden of production is a common reason that courts exclude other justification defenses pre-trial.[93] Simply because a defendant's burden is lesser with respect to self-defense than other justification defenses (i.e., only a burden of production and not of persuasion) does not mean the widely accepted pre-trial-proffer process is suddenly inapplicable.

In addition to the precedent-based reasons for pre-trial resolution of the self-defense issue, there are practical benefits to both parties. The Government obviously gains clarity about what it will have to prove at trial and can then prepare accordingly. But a defendant greatly benefits as well because he or she is able to begin trial with near certainty as to whether the jury will actually

---

compelling as to keep that information off the public record. After conducting that review, the Court will publish a copy of the transcript (redacted to the extent deemed necessary) on the docket. *See* Apr. 5, 2023 Hr'g Public Tr. at 108–09.

[91] *See United States v. Sahakian*, 965 F.2d 740, 741 (9th Cir. 1992); *United States v. Gilcrest*, 792 F. App'x 734, 738 (11th Cir. 2019); *cf. Blue Bird*, 123 F. App'x at 265.

[92] *See Dixon*, 548 U.S. at 8; *Milk*, 447 F.3d at 598.

[93] *See Andrade-Rodriguez*, 531 F.3d at 723–24; *United States v. Lebreault-Feliz*, 807 F.3d 1, 3 (1st Cir. 2015); *Maxwell*, 254 F.3d at 26 (affirming exclusion of necessity argument because the defendant's proffer was "insufficient . . . to carry his entry-level burden of adducing competent proof of necessity").

be instructed on self-defense.  That's valuable to a defendant because self-defense arguments are essentially a point of no return.  Consider this situation.  A defendant raises self-defense during opening argument, and then pursues it on cross-examination of the Government's witnesses and in direct examination of his or her own witnesses.  But at the end of trial the presiding judge determines that the defendant's efforts weren't quite good enough to satisfy his or her burden of production.  So the defendant does not receive a self-defense jury instruction, and the Government is not required to negate self-defense.  Moreover, the defendant is barred from mentioning self-defense in closing arguments.

In such a situation, the defendant has spent the vast majority of trial essentially admitting to having engaged in the conduct that the Government alleged.  But the defendant won't actually get to ask the jury to consider whether his or her conduct was justified.  And, depending on the nature and amount of self-defense evidence presented in the case, the presiding judge may find it necessary to explicitly instruct the jury (1) *not* to consider any of that self-defense evidence and (2) that self-defense does not apply to the case.[94]  Such instructions certainly wouldn't be welcomed by the defendant, as they would risk undermining the defendant's and/or defense counsel's credibility in the eyes of the jury.[95]  Indeed, the only possible benefit to a defendant in such a situation is one he can't have—the potential for jury nullification.  This is yet another reason to decide the issue now.

## III.    Issues Not Resolved by this Order

The Court wants to be clear as to exactly what it has (and, more importantly, has not) resolved in this Order.  The Court has resolved only the dispute as to whether Mr. Davidson may

---

[94] *See* Apr. 5, 2023 Hr'g Public Tr. at 49–53.

[95] *See id.*

pursue self-defense as an argument in the forthcoming trial.  He may not.  That means any evidence related *solely* to a self-defense argument is irrelevant and thus inadmissible at trial.  But there is potentially a great deal of evidence that, while relevant to the self-defense arguments, is also relevant to other general innocence arguments.

This is especially true with respect to the attempted murder charge.  For example, evidence that Mr. Davidson fired at the SUV's rear bumper as a warning—instead of as an attempt to physically harm anyone inside the SUV—would be relevant to the specific-intent element of the attempted murder charge.[96]  Relatedly, evidence that explains why Mr. Davidson felt as though it was necessary to fire warning shots in the first place (e.g., Mr. Davidson's perception of ███'s reputation and Mr. Davidson's near-violent interaction with ███ two days before Mr. Davidson shot at the SUV) may also be relevant because such evidence could make it more likely that the jury believes Mr. Davidson's warning-shot explanation.[97]

Relevance does not guarantee admissibility, of course.  Even relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[98]  The parties will almost certainly disagree about where this Court should

---

[96] *See United States v. White Owl*, 39 F.4th 527, 532 (8th Cir. 2022) (describing "intent to kill" as an essential element of 18 U.S.C. § 1113).

[97] Fed. R. Evid. 401 (defining relevant evidence as that which "has any tendency to make a fact" "of consequence in determining the action" "more or less probable than it would be without the evidence").  On the other side of the admissibility line, however, are the other supposedly unsettling activities that occurred along Lee Street prior to Mr. Davidson shooting at the SUV.  *See supra* p. 4.  Nothing suggests that Mr. Davidson associated ███ ███ with those unsettling events.  Those events therefore are not relevant evidence of whether Mr. Davidson truly intended to fire warning shots at the SUV that he thought was driven by ███ ███ because those events don't tend to explain or otherwise corroborate Mr. Davidson's fear of ███ ███.  Accordingly, Mr. Davidson may not introduce evidence of those events (absent further explicit permission from the Court).  Nor may Mr. Davidson preview those events in opening argument.

[98] Fed. R. Evid. 403.  At the moment, the Court is skeptical that Rule 403 would be offended by any of the potential evidence that both explains Mr. Davidson's warning-shot justification and could have also gone toward a self-defense argument.  Such evidence seems to be (1) extremely relevant as to the specific-intent element of attempted murder and (2) hardly, if at all, prejudicial to the Government.  Indeed, as the Government contended at oral argument, the

draw the line as to the admissibility of evidence that overlaps with the now-foreclosed self-defense arguments. And of course, evidence may be excludable as hearsay or for other reasons. But the Government's instant Motion focuses on only the self-defense arguments. So the Court need not and does not go any farther down this path. Additional objections to particular pieces of evidence that Mr. Davidson seeks to introduce will be resolved if and when the Government formally objects to them.

## CONCLUSION

For the reasons stated above, the Government's Motion in Limine to Prohibit Defendant from Arguing Self Defense is GRANTED.[99] Mr. Davidson cannot argue at trial that he acted in self-defense.[100]

---

idea that Mr. Davidson was scared of ████████████████ could rationally be interpreted by a juror in the Government's favor: A juror could conclude that if Mr. Davidson was as scared as he suggests, then shooting at the car was an attempt (albeit an unsuccessful one) by Mr. Davidson to kill ████████. *See* Apr. 5, 2023 Hr'g Public Tr. at 11–12. If evidence that Mr. Davidson seeks to present at trial could also favor the Government's case, then it is difficult to see how the evidence could possibly be so prejudicial as to warrant exclusion under Rule 403.

[99] Doc. 140. In its Motion, the Government also sought to prohibit Mr. Davidson from "arguing that the United States must prove knowledge that the victims are federal agents, or arguing that law enforcement trespassed." *Id.* at 1 (emphasis omitted). As for the Government's argument that it does not have to prove Mr. Davidson knew the SUV's occupants were federal agents, Mr. Davidson only contested that argument on the basis that such knowledge would be relevant to a self-defense theory. *See* Def.'s Resp. to USA's Mot. in Limine (Doc. 192) at 2–3, 6, 13–15. And with respect to the trespass issue, both the Government's arguments and Mr. Davidson's counterarguments were related only to the parties' anticipation that Mr. Davidson would argue self-defense at trial. USA's Mot. in Limine (Doc. 140) at 8–11; Def.'s Resp. to USA's Mot. in Limine (Doc. 192) at 3, 6, 16. Given the Court's exclusion of any self-defense argument, these issues are now moot. It is fair to note, however, that Mr. Davidson's knowledge of the law-enforcement-officer status of the SUV's occupants may be relevant to whether he truly believed he was firing warning shots at ████. The parties may, but do not have to, introduce evidence as to Mr. Davidson's knowledge of who was in the car.

[100] To be clear, Mr. Davidson may not raise self-defense during voir dire or in opening argument. He also may not preview in voir dire or opening argument any evidence relevant solely to self-defense. And he may not conduct examination of witnesses in such a way as to suggest that he acted in self-defense. Nonetheless, if new evidence comes out at trial (e.g., during examination of the Government's witnesses) that was not known to defense counsel at the time of the proffer, and if such evidence would allow Mr. Davidson to satisfy his burden of production, then the Court will revisit this ruling. *See, e.g.*, *United States v. Banks*, 706 F.3d 901, 907 (8th Cir. 2013).

IT IS SO ORDERED this 26th day of April 2023.

 

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE